## J. M. ANDERSON et al. v. J. D. AKARD et al.

1. CHANCERY PLEADINGS AND PRACTICE. *Lost deed.* Under a bill filed to set up a lost deed, if the evidence clearly establish the proximate date of the deed, the names of the grantor and grantee, the signing of the deed by the grantor and its delivery to the grantee, and that the conveyance was of forty acres of a designated end of a seventy-five acre grant, the complainant would be entitled to have the deed set up, and title divested and vested accordingly, even if the precise. metes and bounds set out in the original deed could not be ascertained.

Anderson *v.* Akard.

2. SAME. *Same.* *Boundaries.* And if the proof shows in addition that the boundaries of the land were pointed out by the grantor by the calls of the grant, beginning at a particular tree on one side of the tract, and running around to a particular tree on the other side, closing the boundaries by a straight line from one of these trees to the other, and that these boundaries were included in the deed, the boundaries of the grant by actual survey between the designated trees, and a straight line from one to the other, may properly be embodied in the deed, although the witnesses present at the making of the deed cannot recollect the poles and bearings actually called for in the lost deed.

3. SAME. *Same.* Any person having a legal or equitable interest in land, however small, whose possession is endangered by suit, and even without suit, may come into equity to set up a deed lost before registration, by bringing before the court all persons having an interest in the land, and the title of the complainant in such a bill may be confirmed by deed of confirmation made after the filing of the bill, or by acquiescence in his claim.

4. SAME. *Same.* *Limitation.* Neither the statutes of limitations, nor lapse of time have any application to a bill filed to set up a lost deed by a person in possession of the land conveyed therein.

FROM UNICOI.

Appeal from the Chancery Court at Ervin. H. C. SMITH, Ch.

N. M. TAYLOR and C. J. ST. JOHN for complainants.

REEVES & CARR for defendants.

COOPER, J., delivered the opinion of the court.

Bill to set up a deed to land alleged to have been made by William Peoples to Absalom McNabb, and to have been unintentionally lost, and to perpetually enjoin the heirs of William Peoples from prosecuting a suit for the recovery of the land. The chancellor

grants the relief sought, and the Referees report that his decree should be affirmed. The heirs except.

The land consists of about forty acres of a seventy-five acre grant held by Peoples, the part of the granted land claimed lying immediately adjoining the land on which McNabb lived, and which belonged to his mother. The proof is entirely conclusive that about the year 1850, William Peoples sold to Absalom McNabb about forty acres of the granted land nearest to him, for a full consideration paid, and executed to him a deed, or as the learned counsel of the heirs concedes, "a writing of some character," intended as a conveyance, and attested by two witnesses. The instrument was never registered. The proof shows that shortly after the sale the forty acres were assessed to McNabb, and continued to be assessed to him, he paying the taxes, and William Peoples only gave in for taxation the residue of the land included in the grant. The evidence is that McNabb claimed the land thereafter, and so far as appears William Peoples never did claim it. Peoples died June 30, 1875. McNabb died in the fall of 1867, leaving a widow and several children. After McNabb's death, the forty acres were assessed to his widow, who paid the taxes. The taxes for the year 1877 not having been promptly paid, the land was sold therefor in 1878, and bought by W. J. Peoples, a son of William Peoples, and one of the defendants, who afterwards permitted the widow to redeem the land. The land was also sold in the lifetime of Absalom McNabb, under an execution against him, and bought by the creditor, who after-

Anderson *v.* Akard.

wards received from McNabb the greater part of the debt, and made a gift of the small · residue to the widow. The written instrument from Peoples to McNabb was by the widow placed in the hands of the complainant, who was her brother-in-law, to be registered. He placed it in his clock, where it remained for some time, and was lost when the clock was repaired, and, after diligent search, has never been found. Feeling that he was to blame for the loss, the complainant bought the land from the widow, and took from her a deed of conveyance, dated May 3, 1880, which deed was also signed by one of her daughters, whose name was not mentioned in the body of. the deed. Previously, and with a view to this conveyance, the complainant had the land run out by the county surveyor in the presence of the defendants, W. J. and M. T. Peoples, sons of William Peoples, who owned, under a conveyance from their father, ·over nine hundred acres of land adjoining a part of the land covered by the seventy-five acre grant. The complainant and the surveyor say that this survey was made in the year 1877, and that the Peoples made no objection to the survey. The two Peoples say that the survey was made after they were notified of the loss of the deed, which they admit was not earlier than 1880, and that they did object to the survey. No part of the land in controversy has ever been enclosed. The McNabbs have cut wood from it, and sold wood thereon to be cut by others. The two Peoples above named say . they have also cut wood on both sides of the line claimed by the McNabbs

as the dividing line. There is no other proof of such cutting, and it does not appear that they crossed the line intentionally. Several witnesses depose to having read the deed sought to be set up, and state positively that it was a conveyance by William Peoples to Absalom McNabb of about forty acres of the grant nearest to the place on which McNabb then resided.

Under these circumstances, the heirs of William Peoples do not except to so much of the report of the Referees as finds that there was a deed executed by their ancestor to Absalom McNabb for some of the land included in the seventy-five acre grant, and that the deed has been lost. What they do insist upon, in their first and second exceptions, is that the Referees, by their finding of the fact that the deed had been executed, were brought directly to the position which they, the heirs, had contended for, and have not decided it, namely, that the contents of the deed were not sufficiently described to be set up, and that the proof fails to show that such a deed as the chancellor set up was in fact executed, being too vague and indefinite for that purpose. The evidence does clearly establish the proximate date of the deed, the names of the grantor and grantee, the consideration, the signature of the grantor, the delivery of the deed by the grantor to the grantee, and that the conveyance was of forty acres, more or less, of the seventy-five acre grant adjoining the McNabb land. The only uncertainty can be as to the exact boundaries given in the deed set up.

The proof shows that the land covered by the

seventy-five-acre grant lies in such a shape that forty acres adjoining the McNabb land can be very easily laid off by running a line across the land from the boundary on one side of the grant to the boundary on the other. In this way the proper quantity of land could be readily obtained from the general description, about which there can be no dispute. Even if the contention made by the exceptions should be sustained, the complainants would still be entitled to have the deed set up according to the general description, and the result would be substantially the same attained by the chancellor's decree: *Hord* v. *Baugh,* 7 Hum., 576.

But we think the testimony sufficiently establishes the boundaries as claimed in the bill and fixed by the decree. Jonathan McNabb, who is clearly proved to have been an attesting witness to the deed, although he himself is not absolutely certain of the fact, and only believes that he was, testifies that he was present when Wm. Peoples traded the land to Absalom McNabb; that Peoples, McNabb and himself went around the land, and Peoples laid off the boundaries; that Peoples then wrote a deed for the land at McNabb's house, signed it, and it was witnessed by Andrew McNabb, and to the best of his belief by himself also; and that Peoples delivered the deed to McNabb. Peoples, he adds, had with him a deed for the whole land, meaning, no doubt, the grant. He went around the boundary of the land, meaning plainly the boundaries of the grant, by the calls of the deed, pointing out the lines and corners. The new line, dividing the

land of the grant, was only a short one: it ran from
the beginning corner to an oak on Price's line. The
witness was one of the chain-bearers when the land
was run out in the presence of complainant, Anderson,
and the two Peoples, as above mentioned. "In run-
ning the land, he says, " we began at a marked pop-
lar, then we followed the line of marked trees to a
white oak, a marked tree, a straight line from the
white oak to the poplar, the beginning corner, includes
the land in controversy. The boundaries set forth
in the deed from Hannah McNabb (the widow of
Absalom McNabb) to the complainant, Anderson, in-
clude the land in controversy."

The substance of this testimony is that William
Peoples, when he sold the land, went around the lines
of the end of the granted land sold, thus designating
the boundaries of the forty acres, beginning at a white
oak on one side and ending at a poplar on the other
side, then closing the boundaries by a straight line
between the poplar and the oak, drawing up the deed
accordingly. These lines were again surveyed by fol-
lowing the calls of the grant, in the presence of
M. T. and J. W. Peoples, in order to prepare the deed
from Hannah McNabb to Anderson. The Peoples
themselves testify that the poplar and oak are well
known corners of the grant, and that a straight line
between them would run on a ridge. The only line
not taken from the grant is this straight line, which,
it is obvious, would not require a survey. The
boundaries thus pointed out by Peoples were included
in the deed, and admit of no doubt. There is, con-

Anderson v. Akard.

sequently, no uncertainty whatever in the boundaries. The criticism of counsel is that the witness calls for an oak on Price's line, whereas Price's line is at the north end of the grant, not on the eastern side. But if the witness is mistaken as to Price's line, he is not mistaken as to the oak, a well known corner of the grant, pointed out by the defendants themselves. So they insist upon the statement of the witness that he does not know that the poles and bearings are correctly stated in the bill, but they are found by the surveyor to be in accordance with the grant, and the defendants have introduced no evidence to the contrary. The witness testifies that the deed described the land by the boundaries of the grant as just pointed out by the grantor. Even if the language of the deed as set up be not exactly the same as the wording of the lost deed, there cannot be a doubt of the substantial identity of the boundaries, and substance is all that can be expected in such cases.

Another witness, who read the lost deed twice, describes the boundaries substantially in the same way, by proving that the dividing line ran from the poplar to the oak, the other boundaries following the calls of the grant. Another witness says he thinks he heard Absalom McNabb and William Peoples speak of the poplar and oak as corners on the land, but will not be positive. Other witnesses, who had read the deed, speak generally of its covering the land included in the boundaries mentioned in the bill. We think the evidence is ample to establish the instrument as set up by the chancellor.

The third exception to the report of the Referees is that the complainants had no title to the land at the time of filing the bill, and therefore no right to file such a bill. The fourth exception is that the complainant, Anderson, did not acquire the title of Nancy McNabb, the daughter of Absalom McNabb, who signed her mother's deed to the complainant, by the mere act of signing, and that the subsequent deed of quit-claim or confirmation, executed by the other children of Absalom McNabb to the complainant, Anderson, did not carry the title of two married daughters, there being no privy examination. At the filing of the bill, Anderson held the land only under the deed of the widow of Absalom McNabb, which deed was signed also by one of her daughters, whose name and interest in the land were not mentioned in the body of the deed. After the filing of the bill all of the other children of Absalom McNabb joined in a quit-claim deed of the land to Anderson, confirming his title. The objection is that the titles of three of the daughters did not pass by these conveyances, and that the subsequent deed would not relate back to the filing of the bill.

The loss of a title deed was not always a ground to come into a court of equity for relief; for if there was no more in the case, although the party might be entitled to a discovery of the original existence and validity of the deed, courts of law might afford such relief, since they would admit evidence of the loss of a deed just as a court of equity would do, and, upon proof of such loss, secondary evidence

of the contents of the deed, and, if necessary, of its validity also, was admissible at law: *Whitfield* v. *Fausset,* 1 Ves., 392. To enable the party, in case of a lost title deed, to come into equity for relief, he must have established that there was no remedy at law at all, or no remedy which was adequate and adapted to the circumstances of the case. If the deed was lost, and the party in possession prayed discovery and to be secured in his possession under it, the jurisdiction of equity would be clear, for no remedy in such a case lay at law: *Dalston* v. *Coatsworth,* 1 P. W., 731. And so this court has held that the loss of a deed to land before registration entitles a party to have the deed set up in equity: *Hord* v. *Baugh,* 7 Hum., 576. For the same reason that there is no remedy at law, a person having only an equity in land, or a right to call for the title, would be entitled to the same relief. And obviously, the extent of the interest or equity of such person in the land would not affect the right. All that equity would require him to do would be to bring all the parties interested in the title before the court, so as to prevent a multiplicity of suits. And that is what the complainant, Anderson, has done in this case. He has joined with himself as co-complainant the person to whom he had contracted to sell the land, and he has made the widow and children of Absalom McNabb defendants, as well as the heirs of William Peoples. The children of Absalom McNabb seem to have surrendered the land in controversy to their mother, recognizing her right by long acquiescence, and by

their deed of confirmation, executed since the filing of the bill. She had at least a right of dower in the land which she could sell: *Daly* v. *Willis*, 5 Lea, 100. And the complainant, Anderson, also obtained by her deed whatever equity she may have acquired by the consent of her children. The signature of one of her daughters to that deed, although it may not have passed her title, might operate by way of estoppel to prevent her from disputing the title: *Berrigan* v. *Fleming*, 2 Lea, 271; *Friedenwald* v. *Mullan*, 10 Heis., 226. And the deed of the other children of Absalom McNabb might operate by way of confirmation, notwithstanding its words of positive grant, especially as it expressly purports to confirm the grantee's title: *Brien* v. *O'Shaughnessy*, 3 Lea, 724: *Augusta Manufacturing Company* v. *Vertrees*, 4 Lea, 75, 83. And the same result might have followed their tacit recognition of the complainant's title by allowing the bill to be taken for confessed against them.

The next exception to the report of the Referees is that certain deeds and other exhibits to the bill and depositions were improperly admitted in evidence over the objections of the Peoples heirs. The bill of exceptions shows that the heirs did except to these exhibits "as being incompetent to be introduced and received as testimony." The exception, as we have repeatedly held, is too general. It should have specified the ground of incompetency, for it might have been such as could easily have been supplied: *Ingram* v. *Smith*, 1 Head, 411; *Garner* v. *State*, 5 Lea, 21;

*Miller* v. *State*, 12 Lea, 223. The Peoples heirs in this case occupy such a position as to entitle them only to the strict law.

The last exception to the report of the Referees is that they should have sustained the defense of the statute of limitations set up by the heirs. The statute relied on is that which limits the right of action against heirs for a debt, contract or liability of the ancestor to seven years from his death: Code, secs. 2281, 2786. The argument is that the right of action accrued at the time when the deed was lost, and that the loss occurred in the lifetime of William Peoples. The weight of testimony is, perhaps, in favor of this contention of fact, but there is evidence tending to show that the loss occurred after the ancestor's death. Be this as it may, the suit is not for the recovery of land, or the enforcement of a debt, contract or liability of the ancestor. It is simply the assertion of an equitable remedy which the party is entitled to resort to at any time when the exigency may arise. The proof leaves no doubt that the complainant, and those under whom he claims, have been using the land in the only mode in which, in its condition, it could be used, without any adverse user. The proof of the heirs does not establish any use of the timber on the land openly adverse to the claims of the McNabbs. And if it did, the possession of the McNabbs would sustain their right, if they had the legal title. Their right to set up their lost deed is one of those continuing equities, they being in legal possession, and holding against any adverse claim, of

which we have several cases in our books, where the statutes of limitations have no application. "Neither the statutes of limitations," this court has said, "nor lapse of time have any application to a bill in chancery, in which the complainant is not seeking to recover any thing, but only resisting the demand of the defendants which they have been constantly opposing: *Lewis* v. *Brooks,* 6 Yer., 167; *Kirtland* v. *Railroad Company,* 4 Lea, 414, 418; *Caldwell* v. *Palmer,* 6 Lea, 652.

Confirm report and affirm decree, with costs.